UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM E. COATS,

                Petitioner,

v.                                                          Case No. 2:08-cv-14290
                                                            Honorable Victoria A. Roberts

CARMEN PALMER,

                Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

### I.  INTRODUCTION

        This is a habeas case filed pursuant to 28 U.S.C. § 2254.  Petitioner William E. Coats, a

state prisoner incarcerated by the Michigan Department of Corrections at the Parnell

Correctional Facility in Jackson, Michigan, filed this Habeas Petition challenging his 2004 jury

conviction in Wayne County Circuit Court for one count of possession with intent to deliver 50

to 449 grams of cocaine.  He was sentenced, as a habitual offender, third offense, to ten to forty

years in prison.  Petitioner was on parole when he committed the crime.

        In his *pro se* pleadings, Petitioner alleges he is entitled to habeas relief because (1) his

Fourth Amendment rights were violated, (2) the trial court erred in denying his Motion to Quash

his preliminary-examination bindover, (3) the trial court erred in denying his First Motion for

New Trial on the basis that the jury was given evidence not properly admitted, (4) the trial court

erred by denying his Second Motion for New Trial on the basis that the officer in charge of the

case was dismissed from the police department due to misconduct, (5) there was insufficient

evidence to support his conviction, (6) his sentence was based on inaccurate information, and (7) he is entitled to a new trial on the basis of newly-discovered evidence.

Respondent argued in his Answer to the Habeas Petition that Petitioner's claims were either non-cognizable on habeas review or without merit.

The Court denies the Petition. The Court also declines to issue Petitioner a Certificate of Appealability.

## II. BACKGROUND

Petitioner's conviction arises from an incident stemming from the execution of a search warrant at the Cedar Woods Apartment Complex, apartment number thirteen, Inkster, Michigan. Petition leased the apartment. Narcotics were found in there. Prior to trial, Petitioner's Motion to Suppress was denied.

Charlene Baker was first to testify at trial. She worked for the owners of the apartment complex as a secretary and oversaw the apartment complexes. She testified that Petitioner leased the apartment where the search warrant was executed.

Brian Pasienza, an Inkster Police Officer, testified that he and four other officers executed a search warrant, on April 22, 2004, at the Cedar Woods Apartment Complex, apartment number thirteen. It was a search warrant to look for narcotics and paraphernalia and items connected with the use or sale of narcotics. When the search was conducted, no one was home.

During the search, Officer Pasienza found a slide scale with cocaine residue on it in a cabinet underneath the bathroom sink. He also found an Aqua Net hairspray can in the

bathroom.  When he shook the can, it did not sound like there was any hairspray in it.  He

unscrewed the bottom of the can and a white, clear plastic bag fell out.  About six grams of

cocaine was found in the bag.  He also found a glass pyrex measuring cup in the dishwasher,

which in his experience is used to cook cocaine into crack cocaine.  Numerous photographs of

Petitioner were found and taken as evidence.  Officer Pasienza also found letters and mail

addressed to Petitioner.  Petitioner was subsequently arrested.

Byron Paisley, another Inkster Police Officer, testified that he assisted Officer Pasienza

in the search.  He found a cheese curl container, with a false bottom, containing cocaine.

Inkster Police Officer Scott Rechtzigel assisted Officer Pasienza in the search as well,

and testified that he found a couple of items with false bottoms.  In one of the items, he found

five bags of cocaine.  He also found three cans of room deodorizer, which in his experience are

used as cutting agents.

Joseph Lemon, the manager of the apartment complex, testified for the defense.  He

testified that a woman by the name of Monica Troy leased the apartment.  He said he knew she

lived in the apartment because he put her name on the mailbox.  He said he saw two or three

males "coming and going" from the apartment.

Following his conviction and sentencing, Petitioner filed an Application for Leave to

Appeal with the Michigan Court of Appeals, raising what appears to be the same claims raised in

this Habeas Petition minus the newly-discovered-evidence claim.  On April 13, 2006, the Court

of Appeals affirmed his conviction and sentence.  *People v. Coats*, No. 258983, 2006 WL

954170 (Mich. Ct. App. Apr. 13, 2006).  Petitioner filed an Application for Leave to Appeal the

Court of Appeals's decision with the Michigan Supreme Court, raising the same claims raised in

the Court of Appeals. On February 27, 2007, the Supreme Court denied his Application. *People v. Coats*, 477 Mich. 1030; 727 N.W.2d 594 (2007) (Table).

On April 5, 2007, Petitioner filed a Post-Conviction Motion with the trial court, alleging that he was entitled to a new trial because newly-discovered evidence showed that the main police officer gave perjured testimony. The trial court denied the Motion on September 21, 2007. *People v. Coats*, No. 04-4863-01 (Wayne Cnty. Cir. Ct. Sept. 21, 2007). Petitioner's subsequent Applications for Leave to Appeal to the state appellate courts were denied because "defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). *People v. Coats*, No. 282339 (Mich. Ct. App. Mar. 28, 2008); *People v. Coats*, 482 Mich. 974; 754 N.W.2d 890 (2008) (Table).

Petitioner filed this Habeas Petition on October 8, 2008, signed and dated October 6, 2008.

### III. DISCUSSION

### A. Standard of Review

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (AEDPA), which provide:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an

4

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, --- U.S. ----, ----, 130 S.Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) ( per curiam )). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, --- U.S. ----, ----, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong

5

case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, --- U.S. ---, --- S.Ct. ---, 2011 WL 1225705, at \*8 (2011) (holding that "[t]his is a difficult to meet and 'highly deferential standard for evaluating state-court rulings") (citing *Harrington*, --- U.S. ---, 131 S.Ct at 786 and *Woodford*, 537 U.S. at 24) (internal quotation marks omitted).

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, --- U.S. ---, 131 S.Ct. at 786. Indeed, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, --- U.S. at ---, 131 S.Ct. at 786-87.

### B. Petitioner's Claims

### 1. Claim I–Non-Cognizable

Petitioner says that he is entitled to habeas relief from alleged violations of the Fourth Amendment. He contends that the police did not have probable cause to search the apartment and that the affidavit was based on unreliable, inadequate, or erroneous information.

Federal courts will not address a Fourth Amendment claim upon habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes. *See Stone v.*

6

*Powell*, 428 U.S. 465, 494-95, 96 (1976).  A court must perform two distinct inquiries when determining whether a petitioner may raise a claim of illegal arrest in a habeas action.  First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim.  Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quoting *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982)).

"Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim."  *Robinson v. Jackson*, 366 F.Supp.2d 524, 527 (E.D. Mich. 2005).  This procedural mechanism is a motion to suppress, ordinarily filed before trial.  *See People v. Ferguson*, 376 Mich. 90, 93-94; 135 N.W.2d 357, 358-59 (1965) (describing the availability of a pre-trial motion to suppress); *see also People v. Harris*, 95 Mich.App. 507, 509; 291 N.W.2d 97, 99 (1980) (analyzing the legality of a warrantless search, seizure, and arrest even though raised for the first time on appeal).  Consequently, Petitioner is entitled to relief on this issue only if he establishes that he was prevented from litigating the Fourth Amendment issue by a failure of Michigan's procedural mechanism.

Petitioner challenged the propriety of the search warrant by filing a Motion to Quash the evidence seized from his residence.  The trial court denied the Motion.  Petiitoner then raised his Fourth Amendment issue before the Michigan Court of Appeals, which denied his claim on the merits, and before the Michigan Supreme Court, which denied leave to appeal.  It is clear then that Michigan courts were aware of Petitioner's Fourth Amendment claim and that he received all the process he was due.

Accordingly, his claim concerning the validity of the search warrant and the denial of his Motion to Quash the seized evidence, are not cognizable on habeas review pursuant to *Stone v. Powell*. Habeas relief is not warranted.

### 2.  Claim II–Non-Cognizable

Petitioner next claims that there was insufficient evidence presented at the preliminary examination to bind him over for trial and that the trial court erred by failing to grant his Motion to Quash the information. Petitioner alleges that there was simply no evidence introduced into the record that associated him with the narcotics found in the apartment.

This claim raises a matter of state law only. It is well established that "'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Louis v. Jeffers*, 497 U.S. 764, 780 (1990)). The Sixth Circuit held that "[i]n a habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 18, 22-23 (6th Cir. 1981).

The purpose of a preliminary examination is to determine whether probable cause exists to justify continued detention of a person charged by complaint or information. *See Gerstein v. Pugh*, 420 U.S. 103 (1975). The abridgement of that right may undermine the validity of continued pretrial detention, but not the ensuing conviction. Under Michigan law, any error in the sufficiency of the proofs at preliminary examination is considered harmless if there is sufficient evidence to convict at trial. *See People v. Hall*, 435 Mich. 599, 602-03; 460 N.W.2d 520, 522 (1990). So it is under federal law as well. *See United States v. Mechanik*, 475 U.S. 66, 73 (1986).

Moreover, there is no federal constitutional right to a preliminary examination. *See*

*Gerstein*, 420 U.S. at 123, 125 n.26 (1975); *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965).

Petitioner's claim that the prosecutor presented insufficient evidence at the preliminary

examination to bind him over for trial raises only a matter of state law and procedure that cannot

form a basis for federal habeas relief. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Scott v. Bock*,

241 F.Supp.2d 780, 793 (E.D. Mich. 2003). Although the Constitution does prohibit any

defendant from being convicted of a crime on the basis of evidence which no reasonable juror

could accept, *see Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979), the sufficiency of a

preliminary hearing is not a matter of federal concern. As such, Petitioner is not entitled to

habeas relief with respect to this claim.

### 3.  Claims III and IV–Non-Cognizable; Claim V–Lacks Merit

In his third claim, Petitioner argues that the trial court erred in denying his First Motion

for New Trial on the basis that the jury was given evidence, a box of mail, that had not been

properly admitted. In his fourth claim, he alleges that the trial court erred in denying his Second

Motion for New Trial on the basis that the officer in charge of the case was dismissed from the

police department because of misconduct. In his fifth habeas claim, Petitioner contends that the

evidence was insufficient to support a guilty verdict.

Petitioner's third and fourth habeas claims are not cognizable upon federal habeas

review. His fifth habeas claim is without merit.

In addressing and rejecting his third habeas claim, the Court of Appeals stated:

Here, the prosecutor moved for the admission of exhibit 43 (a box of mail) during
trial, and stated that he would "inventory it before we complete the case." The
following colloquy ensued:

9

THE COURT:  To the lawyers–you're moving for it's [sic] admission right now, right?

[PROSECUTOR]:  I'm going to move for its admission but we'll go through it so we can organize it better.

THE COURT:  Very well.

Members of the jury, we're just not going to go through each and every one of those, okay.  But if there is a need for you to look at them, then we'll direct that to you later.

Based on this exchange, we conclude that the exhibit was, in fact, admitted into evidence, without objection by defendant, and the court did not err in permitting the jury to view the exhibit.

Defendant's objection to the manner in which the court handled the jury's request for evidence is more troublesome.  After instructing the jury and releasing the alternate juror, the court instructed the attorneys to "be readily available at some point in case we need to reach you.  Just let the clerk know where you can be reached."  The jury was excused from the courtroom to begin deliberations at 12:24.  At 3:04 the court went back on the record, in the presence of counsel and stated:

Just to get you up-to-date, the jury did make some requests for some items here.  They wanted the lease agreement, photograph, judge's instructions, box of mail, furniture receipt, walk-through sheet, that was the first request.  And I had–before the box of mail was given, I told them to go through and make sure there was nothing that referenced to the Defendant being on parole or any other items with reference to the Michigan Department of Corrections or anything of that nature before they got that box.  Then they asked for the apartment ledger and the property list.  And those items were passed on to them.  And a few minutes ago, about twenty minutes ago they sent a note that they have reached a verdict.

The court took the verdict, without objection.  The following day, the attorneys appeared before the court.  At that point, defense counsel objected to the court's failure to notify him of the jury's note, and sought a mistrial.  The court denied the request for a mistrial, but scheduled a hearing regarding the contents of the box.

At the hearing, defense counsel explained his concern that there had been certain items in the box that were prejudicial to defendant, in particular certain photographs, a card of a parole officer located in a planner, and letters from

10

defendant and others indicating that defendant and the persons with whom he was corresponding had been in prison or jail. Defense counsel explained that he did not go through the box at the conclusion of the trial, because the prosecutor expressed the opinion that the jury would not request the box, and that they could go through it later if the jury did request it. The prosecutor then explained that he had removed the photographs from the box before it was presented at trial.

The court officer was sworn in and testified that he went through the box and removed a Michigan Department of Corrections card and two letters. At a later hearing, the officer in charge testified that he went through the box with the court officer, that a letter was removed, and that the box only contained "general mail." The court confirmed that these actions occurred in its presence, denied defendant's request to bring in members of the jury to answer questions regarding the contents of the box and the effect on the jury's deliberations, and reaffirmed its denial of the motion for new trial.

We are troubled by the court's failure to contact defense counsel before submitting the box to the jury. Although the box was admitted into evidence, it was received subject to its being culled through and items being removed, and defense counsel should have been present for this process. However, counsel did not object when the court notified the attorneys that the box had been examined and submitted to the jury in their absence, and did not raise an objection until the day after the verdict was received. Thereafter, the court held a hearing to recreate what had transpired. Any deficiency in the record could have been avoided had defense counsel objected when the court stated what had happened and requested an opportunity to review the box at that time. Notwithstanding the affidavit submitted regarding juror Hoffman's vague statements, there is no basis to conclude that objectionable material was submitted to the jury, and we will not reward counsel's failure to make a timely objection.

*Coats*, 2006 WL 954170, at *4-6.

In addressing and rejecting Petitioner's fourth habeas claim, the Court of Appeals stated:

Here, the fact that Pasienza was discharged from the police force is newly discovered, was not discoverable at trial and is not cumulative to any of the evidence produced at trial. However, defendant has provided no evidence that the fact that Pasienza was discharged from the police force establishes that Pasienza's trial testimony was perjured. Moreover, even if it were established that Pasienza's testimony was perjured, Charlene Baker's, Officers Byron Paisley's and Scott Rechtzigel's testimony independently supports defendant's conviction. Therefore, introduction of evidence of the fact that Pasienza was discharged from the police force would most likely not have led to a different verdict, and thus, the trial court did not abuse its discretion when it denied defendant's second motion

11

for a new trial.

*Coats*, 2006 WL 954170, at \*6-7 (citations omitted).

The Court concludes that these claims are not cognizable on habeas review.  It is well established that habeas review is not available to correct errors of state law.  *Estelle*, 502 U.S. at 67-68 ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see also Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws.").  The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson*.  *Jackson* , 443 U.S. at 319.  Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review.  *See Douglas v. Hendricks*, 236 F.Supp.2d 412, 435-36 (D.N.J. 2002); *Dell v. Straub*, 194 F.Supp.2d 629, 648 (E.D. Mich. 2002); *cf. Tibbs v. Florida*, 457 U.S. 31, 44 (1982) (noting in a different context that "trial and appellate judges commonly distinguish between weight and sufficiency of the evidence.").

In short, "[a] federal habeas court has no power to grant habeas-corpus relief because it finds that the state conviction is against the 'weight of the evidence.'" *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence"); *Cukaj v. Warren*, 305 F.Supp.2d 789, 796 (E.D. Mich. 2004) (federal courts have "no power to grant habeas relief on a claim that a state conviction is against the great weight of the evidence"); *Crenshaw v. Renico*, 261 F.Supp.2d 826, 834 (E.D. Mich. 2003).

12

The Court concludes that the trial court's decisions denying Petitioner's Motions for New Trial, on the basis that the jury was given a box of evidence that was not properly admitted and that the officer in charge of the case was dismissed because of misconduct, are matters of Michigan law and are not reviewable by this Court.

Thus, the only question here is whether the evidence was constitutionally sufficient to prove all the elements of the offense for which Petitioner was convicted beyond a reasonable doubt.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

While a challenge to the sufficiency of the evidence on an established element of an

13

offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also, Jackson*, 443 U.S. at 324 n.16 (same); *Mullaney v. Wilbur*, 421 U.S. 684, 691(1975).  Thus, "[a] federal court must look to state law to determine the elements of the crime."  *Hale v. Davis,* No. 07-12397, 2009 WL 4666489, at *16 (E.D. Mich. Dec. 3, 2009) (citing *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)).

Under Michigan law, the elements of possession with intent to deliver between 50 and 449 grams of cocaine are: "(1) the recovered substance is cocaine, (2) the mixture weighs between 50 and 449 grams, (3) the defendant was not authorized to possess the cocaine, and (4) the defendant knowingly possessed the substance with the intent to deliver."  *People v. Johnican*, 2009 WL 1222153, at *1 (Mich. Ct. App. May 5, 2009) (citing *People v. Crawford*, 458 Mich. 376; 582 N.W.2d 785 (1998)).

Here, Petitioner challenges the sufficiency of evidence related to the possession charges, claiming that no direct evidence exists.  However, "[u]nder Michigan law, either physical possession or 'constructive possession will suffice' to establish this element of the offenses."  *Cannon v. Lafler*, 2007 WL 2728547, at *2 (6th Cir. Sept. 19, 2007) (citing *People v. Johnson*, 466 Mich. 491; 647 N.W.2d 480, 486 (2002)); *People v. Wolfe*, 440 Mich. 508; 489 N.W.2d 748, 753 (1992).  "Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between defendant and the contraband, which the government may show by establishing that the defendant has the right to exercise control over the controlled substances and knows of their presence.  *Id.* (internal citations omitted).

14

The Court of Appeals in addressing this issue stated:

> Here, the police recovered between 50 to 449 grams of cocaine. The large quantity, the presence of four bottles of room deodorizer, which is often added to cocaine as a cutting agent, and the presence of a scale with cocaine residue on it were facts from which an intent to deliver could be inferred. Defendant's control of the premises was sufficiently established by evidence that the apartment was leased to defendant, that police found photographs that had defendant in them, defendant's bank statements and a box of mail addressed to defendant at another address, and that the premises appeared lived in and men's clothing was found throughout the premises. Moreover, while some evidence was presented that Monica Tony (Tony) may have lived at the premises, evidence was also presented that Tony did not live there, and this Court must afford deference to the trier of fact's special opportunity and ability to determine the credibility of the witnesses. Therefore, we conclude that viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of possession with intent to deliver 50 to 449 grams of cocaine were proven beyond a reasonable doubt, and thus, sufficient evidence was presented at trial to support defendant's conviction.

*Coats*, 2006 WL 954170, at *7 (citations omitted).

Petitioner's insufficient-evidence claim challenges the credibility and weight to be accorded the evidence presented at trial. Given the evidence presented, the state court's determination regarding this issue was reasonable. The credibility issues were determined by the jury. It is well-settled that "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. It is the job of the fact-finder, not a federal habeas court, to resolve credibility conflicts. *See Tucker v. Palmer*, 541 F.3d 652, 661 (6th Cir. 2008); *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) (same).

The Court of Appeals's determination regarding this issue is neither contrary to Supreme Court precedent nor an unreasonable application of the law to the facts and habeas relief is not

warranted.

#### 4.  Claim VI–Non-Cognizable

In his next habeas claim, Petitioner challenges his sentence, saying that the trial court sentenced him on inaccurate information.

A sentence based on inaccurate information violates due process and entitles a defendant to resentencing.  *Cook v. Stegall*, 56 F.Supp.2d 788, 797 (E.D. Mich. 1999).   A sentence may violate federal due process if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct.  *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972) (citing *Townsend*; 334 U.S. at 741); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (defendant must have a meaningful opportunity to rebut contested sentencing information).  To prevail on such a claim, a petitioner must show that the court relied upon the allegedly false information.  *See United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Draughn v. Jabe*, 803 F.Supp. 70, 81 (E.D. Mich. 1992).

In this case, the trial court imposed a 120-month sentence.  The record reflects that the sentencing information report was not available at sentencing, and that defense counsel and the prosecutor arrived at a guidelines range of 87-217 months, which included enhancement for Petitioner's sentencing as a habitual offender.  Subsequently, the sentencing information report became available, and it reflected the proper minimum guidelines range of 51 to 85 months.  With the upper level of the range increased by fifty percent, Petitioner's proper guidelines range was 51 to 127 months.

Petitioner filed a Motion to Correct the Sentencing Guidelines Range and for

16

Resentencing.  The trial court granted the Motion to Correct Sentencing, agreeing that, properly

scored, the minimum guidelines range would have been 51-85 months and 51 to 127 months

with the habitual offender enhancement.  However, the trial court denied Petitioner's Motion for

Resentencing, noting that the minimum sentence imposed was within the properly scored

guidelines range of 51 to 127 months.

Petitioner thus had an opportunity to correct the guidelines range.  He has failed to

demonstrate that he was prejudiced by any state-law error or miscalculation.  Habeas relief is not

warranted on this claim.

### 5.  Claim VII–Lacks Merit

In his final habeas claim, Petitioner contends that he is entitled to a new trial based on

newly discovered evidence of his innocence.  Specifically, he points to Officer Pasienza's

dismissal from the police department because of a drug charge.  He claims that the officer was

untruthful during the course of the trial and that there was never an informant, as he maintained.

Petitioner alleges that, but for the officer's perjured testimony, he would not have been

convicted.  The Court of Appeals addressed this claim when discussing the issue whether the

trial court erred in denying Petitioner's Second Motion for New Trial.  See III, B, 3, *supra*.

A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in

custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §

2254(a).  Thus, the existence of new evidence, standing alone, is not a basis for granting the writ.

As the Supreme Court explained: "Claims of actual innocence based on newly discovered

evidence have never been held to state a ground for federal habeas relief absent an independent

constitutional violation occurring in the underlying state criminal proceeding."  *Herrera v.*

17

*Collins*, 506 U.S. 390, 400 (1993) (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred constitutional claim considered on the merits."); *Schlup v. Delo*, 513 U.S. 298, 314-16 (1995) (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).  Thus, the newly discovered evidence, standing alone, provides no basis for habeas relief.

Further, Petitioner's evidence falls far short of that necessary to establish that he is innocent.  In *Herrera*, without elaborating further, the Court noted that even if a free-standing claim of innocence were cognizable on habeas review, "the threshold showing for such an assumed right would necessarily be extraordinarily high."  *Herrera*, 506 U.S. at 417.  In *Schlup*, the Court explained that, to establish actual innocence, the petitioner must "show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Schulp*, 513 U.S. at 327 (internal citation and quotation omitted).

The Supreme Court also explained that a petitioner cannot establish his actual innocence merely rehashing innocence claims raised in the state courts, and relying on the evidence adduced at trial.  If he could, federal habeas review would become nothing more than a second

18

trial on the merits, something the Supreme Court has repeatedly admonished federal courts to avoid. *See Milton v. Wainwright*, 407 U.S. 371, 377 (1972) ("The writ of habeas corpus has limited scope; the federal courts do not sit to re-try state cases de novo but, rather, to review for violation of federal constitutional standards."). Thus, "to be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence that was not presented at trial." *Schlup*, 513 U.S. at 324. "Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted); *accord Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence").

Petitioner's newly discovered evidence does not directly go to his factual guilt or innocence, but only to impeaching the testimony of Officer Pasienza. Such newly discovered evidence does not provide sufficient evidence of actual innocence to support a free-standing innocence claim. *See Calderon v. Thompson*, 523 U.S. 538, 563 (1998) (newly discovered impeachment evidence, which is "a step removed from evidence pertaining to the crime itself," "provides no basis for finding" actual innocence); *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992) (newly discovered impeachment evidence "will seldom, if ever," establish actual innocence). Furthermore, the Court of Appeals concluded that Petitioner failed to establish how Officer Pasienza's discharge from the police force showed that he trial testimony was perjured, and that other testimony independently supported his conviction. Thus, the introduction of that evidence most likely would not have led to a different verdict. *See Coats*, 2006 WL 954170, at *6-7 (citations omitted).

The Court agrees and concludes that Petitioner is not entitled to habeas relief with respect to this claim.

### C.  Certificate of Appealability

The Court also declines to issue a Certificate of Appealability (COA) to Petitioner.  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U .S.C. § 2253(c)(2).  "The district court must issue or deny a [COA] when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a).

When a federal court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000); *see also Miller-El v. Cockrell* , 537 U.S. 322, 327 (2003) (citing *Slack*).

The Court declines to issue Petitioner a COA; reasonable jurists would not find it debatable whether this Court was correct in its rulings.

### IV.  CONCLUSION

For the reasons stated, the Court: (1) DENIES Petitioner's "Petition for Writ of Habeas Corpus" [Dkt. # 1] with prejudice; and (2) DECLINES to issue Petitioner a COA.

**IT IS ORDERED**.


S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  November 30, 2011

The undersigned certifies that a copy of this document was served on the attorneys of record and William Coates by electronic means or U.S. Mail on November 30, 2011.

S/Linda Vertriest
Deputy Clerk